Melissa Anne Hailey, Esq.
AZ State Bar No. 027891
Law Offices of W. Randolph Barnhart, P.C.
50 South Steele Street, Suite 500
Denver, CO 80209
Tel: (303) 377-6700
Fax: (303) 377-6705
mhailey@rbarnhartlaw.com

*Pro hac vice application submitted herewith*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS | Civil Case No. _____ |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| vs. | |
| KEN SALAZAR, U.S. Secretary of the Interior, sued in his official capacity, | |
| Defendant. | |

## INTRODUCTION

1. Plaintiff, WildEarth Guardians ("Guardians"), brings this action against Defendant, Ken Salazar, U.S. Secretary of the Interior ("the Secretary"), to force him to carry out his duties under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq. The Secretary has failed to comply with his mandatory duty under the ESA to make a required finding on Guardians' petition to list the Mexican wolf (*Canis lupus baileyi*) as an endangered or threatened species – separate from *Canis lupus* – and to designate its critical habitat. This lawsuit seeks to compel the Secretary to make the overdue finding on Guardians' petition in hopes that this subspecies, which has been reduced to one population numbering fewer than 50 individuals, will be adequately protected under the law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 2201 (declaratory relief), 2202 (injunctive relief), and 16 U.S.C. §§ 1540(c) and (g) (action arising under ESA and citizen suit provision). As required by the ESA, Guardians has afforded the Secretary with more than 60-days written notice of his violation of law and of Guardians' intention to sue. The Secretary has not remedied his violation of law. An actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

3. Venue lies in the District of Arizona pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). The Mexican wolf lives in this judicial district. Both Guardians and the Secretary maintain offices within this judicial district.

## PARTIES

4. Plaintiff, WILDEARTH GUARDIANS, sues on behalf of itself and its adversely affected members. WildEarth Guardians is a non-profit environmental organization whose mission is to protect and restore wildlife, wild places, and wild rivers in the American West. Guardians has over 4,500 members, the majority of which reside in Arizona and New Mexico, the only states where the Mexican wolf currently occurs. Guardians has an active endangered species protection campaign. As part of that campaign,

1

1  Guardians has repeatedly urged the United States Fish and Wildlife Service ("FWS"), that
2  agency to which the Secretary has delegated his ESA duties, to list imperiled species,
3  including the Mexican wolf, as threatened or endangered pursuant to the ESA.  Guardians
4  invested substantial time and resources into preparing its listing petition for the Mexican
5  wolf and is harmed by the Secretary's refusal to rule on that petition in the form of a 12-
6  month finding.  Guardians' staff and members are particularly concerned with the
7  conservation of the Mexican wolf and the ecosystem on which it depends, as they
8  frequently use and enjoy the Mexican wolf and its habitat for wildlife viewing, recreational,
9  aesthetic, and scientific activities and will continue to do so.  Guardians' interest in the
10 conservation of the Mexican wolf and its habitat is harmed by the Secretary's refusal to list
11 this subspecies under the ESA, especially in light of its critical imperilment.
12       5.      Defendant KEN SALAZAR is the Secretary of the United States Department
13 of the Interior and has the ultimate responsibility for implementation of the ESA.  He is
14 sued in his official capacity.

## LEGAL BACKGROUND

16       6.      Congress has found that "various species of fish, wildlife, and plants in the
17 United States have been rendered extinct as a consequence of economic growth and
18 development untempered by adequate concern and conservation," and that "other species of
19 fish, wildlife, and plants have been so depleted in numbers that they are in danger of or
20 threatened with extinction."  16 U.S.C. §§ 1531(a)(1) and (2).  Thus, in enacting the ESA,
21 Congress intended to "provide a means whereby the ecosystems upon which endangered
22 and threatened species depend may be conserved, [and] to provide a program for the
23 conservation of endangered species and threatened species."  Id. § 1531(b).
24       7.      The ESA offers many benefits to listed species in order to encourage their
25 recovery.  The ESA requires the Secretary to designate critical habitat for all threatened and
26 endangered species concurrently with their listing and to subsequently develop recovery
27 plans for such species.  See 16 U.S.C. §§ 1533(a)(3) and (f).  The ESA also requires that all
28 federal agencies "carry out programs for the conservation" of threatened and endangered

2

species and to consult with the Secretary in order to ensure that their actions are "not likely to jeopardize the continued existence" of such species or "result in the destruction or adverse modification" of their critical habitat. Id. §§ 1536(a)(1) and (2). Additionally, the ESA prohibits any person from "taking" a threatened or endangered species. Id. §§ 1538(a)(1)(B); 50 C.F.R. §§ 17.21 and 17.31. To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

8. Before the ESA can protect an imperiled species or that species' habitat, however, the species must be listed under the ESA. See 16 U.S.C. § 1533. The listing process is the first critical step in the ESA's system of species protection and recovery.

9. The ESA requires the Secretary to list species of plants and animals found to be facing extinction as "threatened" or "endangered." 16 U.S.C. § 1533(a)(1). An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range." Id. § 1532(6). A "threatened species" is a species "which is likely to become an endangered species within the foreseeable future." Id. § 1532(20). Under the ESA, "species" includes any subspecies or "distinct population segment" of wildlife. Id. § 1532(16).

10. In accordance with 16 U.S.C. §§ 1533(a)(1)(A)-(E), the Secretary must determine whether a species is "endangered" or "threatened" due to any one, or any combination of, the following five factors:

  (A) the present or threatened destruction, modification, or curtailment of the species' habitat or range;

  (B) overutilization for commercial, recreational, scientific, or educational purposes;

  (C) disease or predation;

  (D) the inadequacy of existing regulatory mechanisms; or

  (E) other natural or manmade factors affecting the species' continued existence.

1  11. Listing decisions must be based on "the best available scientific and
2  commercial information regarding a species' status, without reference to possible economic
3  or other impacts of such determination." 50 C.F.R. § 424.11(b).

4  12. Any interested person can begin the listing process by filing a petition to list a
5  species with the Secretary. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

6  13. Upon receipt of a petition to list a species, the Secretary shall make a
7  preliminary determination as to whether the petition "presents substantial scientific or
8  commercial information" supporting the petitioned action. 16 U.S.C. § 1533(b)(3)(A).
9  Under the ESA's implementing regulations, "substantial information" is that "amount of
10 information that would lead a reasonable person to believe that the measure proposed in the
11 petition may be warranted." 50 C.F.R. § 424.14(b).

12 14. The Secretary is required, "to the maximum extent practicable," to make this
13 preliminary determination within 90 days of receipt of the petition. 16 U.S.C. §
14 1533(b)(3)(A). Thus, the Secretary's initial decision on a listing petition is known as a "90-
15 day finding."

16 15. If the petition is found to present substantial information, the Secretary must
17 "promptly publish" his positive 90-day finding in the Federal Register and "promptly
18 commence" a status review of the species. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. §
19 424.14(b)(3).

20 16. It is through this status review, which the Secretary must complete within
21 twelve months of receiving the listing petition, that the Secretary determines whether the
22 petitioned action is actually warranted. See 16 U.S.C. § 1533(b)(3)(B). The Secretary's
23 ultimate decision on a listing petition is known as a "12-month finding."

24 17. The Secretary's 12-month finding shall state that either: (1) the petitioned
25 action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is
26 warranted but presently precluded by other pending proposals for listing species, provided
27 certain circumstances are present. See 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. §
28 424.14(b)(3).

4

1       18.     If the Secretary finds that the listing of the species is warranted, the Secretary must then publish in the Federal Register a proposed rule to list such species as endangered or threatened, and thus provide it with the protections of the ESA.  See 16 U.S.C. § 1533(b)(5).

        19.     Within one year of the publication of a proposed rule to list a species, the Secretary must make a final decision on the proposal or extend the deadline by up to six months in cases of scientific uncertainty.  See 16 U.S.C. § 1533(b)(6)(A).

        20.     "Concurrently" with listing a species as threatened or endangered, the Secretary must designate critical habitat for the species to the maximum extent prudent and determinable.  16 U.S.C. § 1533(a)(3)(A)(i).  See also id. § 1533(b)(6)(C).

**STATEMENT OF FACTS**



        21.     The Mexican wolf is the smallest, rarest, and most genetically distinct subspecies of the gray wolf species (*Canis lupus*).  The Mexican wolf once roamed by the thousands across portions of Arizona, New Mexico, Texas, and the Republic of Mexico.  The Mexican wolf declined, and was eventually exterminated, as a direct result of concerted federal eradication efforts undertaken on behalf of American livestock interests.  By 1970, the Mexican wolf had been completely eradicated from the United States and suffered a similar fate in Mexico by the early 1980s.

        22.     Today, the Mexican wolf is limited to one wild population of under 50

individuals and two breeding pairs within the Blue Range Wolf Recovery Area ("BRWRA") of Arizona and New Mexico. All other Mexican gray wolves, like the ones pictured here, persist in captivity by virtue of an emergency captive breeding program launched by FWS in 1980. Despite more than three decades of federal protection, the Mexican wolf remains the most endangered mammal in North America and the most endangered wolf in the world.

23. The Secretary listed the Mexican wolf subspecies as endangered pursuant to the ESA on April 28, 1976. See 46 Fed. Reg. 17736 (1976). On March 9, 1978, the Secretary consolidated all separate gray wolf subspecies listings in the lower 48 states into a single species-level listing for *Canis lupus*. See 43 Fed. Reg. 9607 (1978). Under the 1978 gray wolf listing rule, all subspecies of gray wolf were listed as endangered, except in Minnesota where the wolf was listed as threatened. The 1978 listing rule remains in effect today. In this rule, however, the Secretary expressly states that he will continue to recognize the Mexican wolf as a valid biological subspecies for the purposes of research and conservation.

24. Through FWS, the Secretary has continued to recognize the Mexican wolf subspecies in this regard. For instance, in 1982, FWS developed a recovery plan for the Mexican wolf and, in 1996, developed a final environmental impact statement ("EIS") for the release of a wild population of Mexican gray wolves into the Southwestern United States. Pursuant to ESA § 10(j), FWS began releasing Mexican gray wolves into the BRWRA in 1998. See 16 U.S.C. § 1539(j)(2)(A) (authorizing FWS to release members of an endangered species into an area currently unoccupied by the species in order to further that species' conservation). Since that time, FWS has been managing these wild Mexican gray wolves as an "experimental, non-essential" ("ENE") population under the terms of 50 C.F.R. § 17.84(k), the Mexican wolf Section 10(j) Rule. In accordance with ESA § 10(j), this Rule lowers the legal protections for the wild population of Mexican wolves, such that FWS has the authority to "control," i.e., kill or trap and forever return to captivity, certain wild wolves under certain circumstances.

25. The management flexibility allowed FWS over the ENE population is meant to encourage conservation of the Mexican wolf. See 50 C.F.R. § 17.84(k)(2). Nonetheless, FWS has systematically abused the authority set forth at 50 C.F.R. § 17.84(k) by permanently removing an inordinate number of wolves from the wild and failing to stem the onslaught of illegal poaching, which has persisted throughout the life of the reintroduction project.

26. As a result, FWS's management of the wild Mexican wolf population has been a failure. Although the EIS predicted 102 wild wolves and 18 breeding pairs would inhabit the BRWRA by 2006, the most recent end-of-year population survey in 2009 documented just 42 individuals and two breeding pairs in the wild. FWS recognizes that causes of mortality in the wild Mexican wolf population have been largely human-related. Indeed, the agency recently stated that the Mexican wolf population has had a "failure (mortality plus removal) rate too high for natural or unassisted population growth, [thus] the population has oscillated between 40 and 60 wolves since 2003." 75 Fed. Reg. 46894, 46986 (2010) (the Secretary's positive 90-day finding on Guardians' petition to list the Mexican wolf subspecies separate from the gray wolf species).

27. Through FWS, the Secretary has publicly acknowledged the lack of recovery success achieved under the current listing scheme for the Mexican wolf:

> [I]ndividual threats (including aspects of the current management regime), and more so the combination of threats, still have the potential to decrease population size and growth rate, causing [the wild Mexican wolf population] to remain at a level at which it is more susceptible to stochastic events and to further hinder progress toward the population objective to establish a population of at least 100 wolves. [Even if this goal were attained, however,] it is clear that establishment of a single population of at least 100 wolves does not achieve resiliency, redundancy, or representation [, which are the markers of species viability].

Draft Mexican Wolf Conservation Assessment (FWS, 2008), at 64-65. See also Final Mexican Wolf Conservation Assessment (FWS, 2010), at 78 (stating same).

28. Guardians agrees with the Secretary that the Mexican wolf is not being adequately conserved. Thus, on August 10, 2009, Guardians filed with the Secretary a

1  petition seeking heightened legal protections for the Mexican wolf.  Specifically,
2  Guardians' petition requested that the Secretary once again list the Mexican wolf as a
3  separate subspecies apart from the larger gray wolf listing.  The Secretary received
4  Guardians' petition on August 12, 2009.
5      29.   In order to comply with the ESA, the Secretary should have made a 90-day
6  finding on Guardians' petition or about November 10, 2009.  He did not.  Rather, the
7  Secretary published a 90-day finding on Guardians' petition only after Guardians filed suit
8  forcing him to do so.  See WildEarth Guardians v. Salazar, 2:10-cv-00102-MEA.
9      30.   On August 4, 2010, the Secretary issued a positive 90-day finding on
10 Guardians' petition.  See 75 Fed. Reg. 46894 (2010).  In so doing, the Secretary concluded
11 that the petition presented substantial scientific and commercial information that Guardians'
12 request to list the Mexican wolf as an endangered subspecies separate from the gray wolf
13 listing may be warranted.
14      31.   Because the Secretary rendered a positive 90-day finding on Guardians'
15 petition to list the Mexican wolf, the Secretary was required to proceed to the second step in
16 the ESA listing process and timely complete a 12-month finding for this subspecies. He did
17 not.  The Secretary's 12-month finding for the Mexican wolf should have been published in
18 the Federal Register on or before August 12, 2010.  See Biodiversity Legal Foundation v.
19 Badgley, 309 F.3d 1166, 1178 (9th Cir.2002) ("both the initial finding and the final
20 determination [on an ESA listing petition] must be completed within twelve months of the
21 date the petition is received").  As of today, the Secretary has yet to issue such a 12-month
22 finding.
23      32.   On August 13, 2010, Guardians provided the Secretary with written 60-day
24 notice of its intent to sue for failure to make a 12-month finding on its petition to list the
25 Mexican wolf subspecies separate from the gray wolf species.  The Secretary received
26 Guardians' notice of intent to sue on August 19, 2010.

### CLAIM FOR RELIEF

28    33.   Each and every allegation set forth in this Complaint is herein incorporated by

1  reference.

2      34.    The Secretary has failed to make a 12-month finding on Guardians' petition to list the Mexican wolf as an endangered subspecies separate and distinct from the gray wolf species, and has failed to publish such finding in the Federal Register.

    35.    By failing to render a 12-month finding on Guardians' petition within 12 months of receipt, the Secretary has failed to perform a mandatory duty required by 16 U.S.C. § 1533(b)(3)(B) within the meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WildEarth Guardians respectfully requests that this Court enter judgment providing the following relief:

(A)    A declaratory judgment that the Secretary has failed to comply with a non-discretionary duty under 16 U.S.C. § 1533(b)(3)(B);

(B)    An order compelling the Secretary to make a 12-month finding on Guardians' petition and to publish such finding in the Federal Register by a date certain;

(C)    An order awarding Guardians its costs incurred in pursuing this action, including attorneys' fees, as authorized by the ESA citizen suit provision, 16 U.S.C. § 1540(g);

(D)    The retention of jurisdiction to insure that the terms of the decree are carried out; and

(E)    An order granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 27th day of October 2010.

/s Melissa Anne Hailey

*Attorney for Plaintiff WildEarth Guardians*